IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENSANDRA SMITH and MARY ELLEN NILLES, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>LOYOLA UNIVERSITY MEDICAL CENTER,<br><br>      Defendant. | Case No. 23- cv -15828<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>Date:   11/09/2023<br>Jury Trial Demanded |

## NOTICE OF REMOVAL

1. Through its long-term implementation of a nationwide health information technology directive, the federal government has effectively orchestrated a public-private initiative that now directly engages healthcare providers to comply with federally endorsed practices. This litigation challenges the legitimacy of actions Loyola University Medical Center ("LUMC") has taken in compliance with the federal directive. LUMC therefore removes this case pursuant to the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1).

2. In such circumstances, district courts permit removal under the federal officer removal statute. *See e.g., Baker v. Atlantic Richfield Company*, 962 F.3d 937 (7th Cir. 2020); *Ruppel v. CBS Corporation*, 701 F.3d 1176 (7th Cir. 2012); *See Northwestern Memorial Healthcare v. Aetna Better Health of Illinois, Inc.*, 2023 WL 2745549 (N.D. Ill. 2023).

## **JURISDICTION**

3. LUMC removes this case pursuant to the federal office removal statute. *See* 28 U.S.C. § 1442(a)(1). This statute allows removal when a defendant is, "the United States or any agency thereof or any officer (or any person acting under that officer) of the United states or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office…" *See* 28 U.S.C. § 1442(a)(1).

4. The pertinent statute, 28 U.S.C. § 1442(a)(1), was passed by Congress to provide a federal forum for officers whose duties under federal law conflict with state law. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179 (7th Cir. 2012). Furthermore, the statute was created because of concerns "that unfriendly states will impose state-law liability on federal officers and their agents for actions done under the immediate direction of the national government." *Id.* The statute allows "any officer .. of the United States or .. person acting under them to remove actions for or relating to any act under color of such office. *Id*. (quoting 28 U.S.C. § 1442(a)(1)). Under the federal officer removal statute, a removing defendant must show that it is a (1) person; (2); acting under the United States, its agencies, or its offices; (3) that has been sued for or relating to any act under color of such office; and (4) has a colorable federal defense to the plaintiff's claim. *See Baker v. Atlantic Richfield Company*, 962 F.3d 937, 941 (7th Cir. 2020).

5. From at least 2004, the federal government, by way of executive orders, legislative acts, and regulatory and sub-regulatory action, has acted to create a public-private initiative with the purpose of implementing a nationwide infrastructure for health information technology. Through this initiative, the federal government has incentivizes and directs healthcare providers who participate in the Medicare and Medicaid program (like LUMC) to offer patients online access to their healthcare records and to enhance patient capabilities with their medical information. In

this regard, the federal government has created the technology infrastructure that it envisions for this initiative, a portal for Medicare beneficiaries with the same 'source code' at issue in this action.

6. LUMC has assisted and followed the federal government's clear direction in this initiative's efforts. As a result of LUMC's federally instructed action, it has acted within the penumbra of federal action and office. Thus, given this action and the Supreme Court's instruction that the federal officer statute must be broadly construed, and because this litigation challenges federally-directed conduct, LUMC respectfully requests removal as the requirements of the federal removal statute are satisfied. *See* 28 U.S.C. § 1442(a)(1).[1]

## NATURE OF THE CASE

7. LUMC is a healthcare system that is based in Chicago, Illinois with affiliated medical centers located throughout the state of Illinois.

8. On September 26, 2023, Plaintiffs filed a class action complaint against LUMC, in the Chancery Court of Cook County of the State of Illinois Case No. 2023CH08410 and Plaintiffs served LUMC with the Complaint on October 10, 2023.

9. Plaintiffs' Complaint alleges that LUMC improperly transmitted and disclosed Plaintiffs' and Class Members' confidential personally identifiable information ("PII") and protected health information ("PHI") to third party platforms such as Meta Platforms, Inc. d/b/a ("Facebook") and/or Google LLC d/b/a Google ("Google") via tracking pixels installed on LUMC's website. (*See* Plaintiffs' Complaint attached as Exhibit A, ¶ 1.)

---

[1] LUMC is aware that this issue of removal pursuant to the federal removal statute is currently before the Northern District of Illinois in another case with a very similar factual predicate. *See* Mayer v. Midwest Physician Administrative Services, LLC, Case No: 1:23-cv-03132 (Honorable Judge Mary M. Rowland).

10. Plaintiffs further allege that LUMC serves its patients via its Online Platforms, which "encourages patents to use for searching for providers, scheduling appointments and/or procedures, communicating with their healthcare providers, reviewing their medical histories, and communicating other information related to their treatment and status as a patient." (*See* Ex. A, ¶ 37.) At the core of their allegations, Plaintiffs allege that they (and the proposed Class Members) visited LUMC's Online Platforms and provided their PHI and PII through the use of those Platforms. LUMC is alleged to have then improperly transmitted to Plaintiffs' private information to third parties like Facebook and Google. (*See* Ex. A, ¶ 81.)

11. The Complaint alleges that Plaintiff Kensandra Smith is a person that received healthcare services from one of the hospitals within LUMC's network and used LUMC's Online Platforms to communicate confidential patient information. (*See* Ex. A, ¶ 102.) Plaintiff Smith alleges that, as a result of using LUMC's Online Platforms, she has received targeted medical advertising on social media related to medical treatment. (*See* Ex. A, ¶ 109.) Similarly, Plaintiff Mary Ellen Nilles alleges that she received healthcare services from one of the hospitals within LUMC's network and used LUMC's Online Platforms to communicate confidential patient information. (*See* Ex. A, ¶¶ 110-14.) Plaintiff Nilles has allegedly received targeted medical advertising on social media related to her medical treatment. (*See* Ex. A, ¶ 117.)

12. Plaintiffs' Complaint brings eight causes of action against LUMC: (1) Negligence; (2) Negligence Per Se; (3) Invasion of Privacy; (4) Breach of Implied Contract; (5) Unjust Enrichment; (6) Breach of the Implied Duty of Confidentiality; (7) Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; and (8) Violation of Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14 *et seq.* (*See* Ex. A). LUMC denies any liability under these claims and plans to challenge the validity of Plaintiffs' causes of action.

### *The Meaningful Use Program – Federal Action*

13. In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). This Order was instrumented to create a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

14. Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. *See* 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars in order to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id*.

15. Consistent with its mandate, the ONC has published guidance for private providers to follow, including five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it- strategic-plan-2015-2020.php) (emphasis added). And, in the 2020-2025 plan, it noted that this has already happened, saying: "The federal government and private sector have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-01/2020-2025FederalHealthIT%20StrategicPlan_0.pdf ("2020-2025 Strategic Plan").

16. One critical aspect of this strategy is the "Meaningful Use" program. *See* 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.. The Meaningful Use regulations mandated that participants provide their patients with the ability to, "view, download, and transmit" their health information online. *See, e.g.,* 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) (Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission."); *id.* at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from the inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge"). Further, this federal governmental command came with a consequence: if health systems did not meet the Meaningful Use requirements, including with respect to the view, download and transmit requirements, they would not receive their full Medicare reimbursements.

17. To achieve those specifications, the Center for Medicare and Medicaid Services ("CMS") recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records.

18. The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

19.     In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

### *LUMC is a "Person" under Federal Officer Statute*

20.     By the plain terms of the statute, removal is permitted by "any person acting under that officer." *See* 42 U.S.C. § 1442(a)(1). While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g. Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012). Indeed, Courts consistently have held that corporations were 'persons' under 42 U.S.C. § 1442(a)(1). See *id.*; *Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009). Furthermore, the relevant relationship is the private person 'acting under' a federal officer or agency. *Baker v. Atlantic Richfield Company*, 962 F.3d 937, 942 (7th Cir. 2020). Typically, this relationship involves 'subjection, ***guidance***, or control.' *Id.* (emphasis added).

21.     Plaintiffs allege that LUMC "is an Illinois non-profit corporation with its principal place of business . . . [in] Illinois." *See* Exhibit A, ¶ 34. Since the federal officer statute is to be broadly construed, LUMC qualifies as a person under this statute.

### *LUMC Acted Under a Federal Officer*

22. For purposes of removal, this requirement focuses on the relationship between the federal government and the private entity. It asks whether the entity is engaged in "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "detailed regulation, monitoring, or supervision." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (citing to *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007). Indeed, the Seventh Circuit has held that acting under the United States, its agencies, or its officers should be liberally construed. *Ruppel*, 701 F.3d at 1181. Furthermore, the Seventh Circuit has found that, the "Supreme Court's jurisprudence teaches that the policy in favor of federal officer removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Baker v. Atlantic Richfield Company*, 962 F.3d 937, 943 (7th Cir. 2020)

23. Here, these fundamental requirements are met. The federal government is incentivizing, regulating, monitoring, and supervising LUMC's actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

24. First, LUMC (along with countless other entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information by creating an online patient portal. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

25. Second, in the absence of LUMC's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscores, it would likely attempt to do exactly that.

26. Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

27. Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like LUMC). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes LUMC and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

28. In like circumstances, courts have held that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *See Doe v. UPMC*, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020), *interlocutory appeal denied*, 2020 WL 5742685 (W.D. Pa. Sept. 25, 2020) (holding that the University of Pittsburgh Medical Center's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

*Plaintiffs' Claims Relate to the Actions Under Color of Federal Office*

29. Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office. This factor requires that Plaintiffs' claims occur while LUMC "acted under color of federal authority." *See Ruppel*, 701 F.3d at 1181.

30. Plaintiffs' Complaint directly challenges the data analytic practices used by LUMC and its Online Platforms, which help drive patients to LUMC's website and to its Online Platforms. *See, e.g.* Exhibit A, ¶¶ 8-18.

31. Plaintiffs' Complaint also generally targets LUMC's alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical website. *Id*. This – as manifested by the government's own use of these third parties – is precisely what the Meaningful Use program envisions.

32. Indeed, as Plaintiffs allege, the entire point of using the third-party services is to direct traffic to, and increase engagement with LUMC's website. For example, Plaintiffs allege that LUMC 'purposely installed the Tracking Pixels on its Online Platforms to advertise its services to Plaintiffs and Class Members." (*See* Ex. A, ¶ 39). In this alleged scheme, LUMC implemented this technology to track, record, and disclose Plaintiffs' confidential and private information in order to disclose patients' protected information to Facebook, Google, and/or other unauthorized third-parties. (*See* Ex. A, ¶ 44).

33. Further, Plaintiffs specifically allege a direct violation of the Illinois Eavesdropping Statute through the tracking pixels on LUMC's website. *See* Exhibit A, ¶¶ 298-321.

34. For these reasons, Plaintiffs' claims meet the statutory requirements of being "for or related to" LUMC's actions taken under color of federal law.

*LUMC Raises A Colorable Federal Defense to Plaintiffs' Claims*

35. The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989). Illinois Courts have asserted that the validity of the defense will present "complex issues, but the propriety of removal does not depend on the answers." *Ruppel,* 701 F.3d at 1182. *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994). Instead, the claimed defense need only be "plausible." *Ruppel*, 701 F.3d at 1182.

36. Here, there is at least one colorable federal defense to the claims at issue that satisfy this requirement. *Baker v. Atlantic Richfield Company*, 962 F.3d 937, 947-48 (7th Cir. 2020)

37. In response to Plaintiffs' repeated claims that "medical information" was disclosed, LUMC will argue that the information purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The Northern District of Illinois has already made this holding in an analogous case that establishes similar Metadata is outside the purview of HIPAA. *See Kurowski v. Rush System for Health*, 2023 WL 2349606, at *5 (N.D. Ill. Mar. 3, 2023). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar. In addition, LUMC intends to raise other colorable federal defenses including preemption as to Plaintiffs' state law claims, and a free speech defense to all of Plaintiffs' claims pursuant to the First Amendment.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

38. LUMC satisfies all of the procedural requirements under 28 U.S.C. § 1446.

39. LUMC is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by "service," pursuant to 28 U.S.C. § 1446.

40. LUMC files this Notice in the United States District Court of the Northern District of Illinois, because the State court in which the action is pending, Circuit Court of Cook County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Civil Procedure, Rule 11.

41. LUMC has attached hereto as Exhibit "A" a true and correct copy of "all process, pleadings, orders, and other documents," currently on file in the state court, including Plaintiff's Complaint.

42. Upon filing this notice, LUMC will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the State court.

Respectfully submitted,

Loyola University Medical Center

By: Emily A. Miller
By Its Attorneys

Emily A. Miller
Brian E. Middlebrook – *Pro Hac Vice Forthcoming*
Justin M. Holmes – *Pro Hac Vice Forthcoming*

GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
Telephone: (312) 565-1400
Facsimile: (312) 565-6511

Dated: November 9, 2023