**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KENSANDRA SMITH and MARY ELLEN NILLES, *individually, and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>LOYOLA UNIVERSITY MEDICAL CENTER,<br><br>Defendant. | Case No.: 1:23-cv-15828 |

**DEFENDANT LOYOLA UNIVERSITY MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) & 12(b)(6)**

Plaintiffs' Opposition does not remedy the fundamental flaw with their lawsuit—Plaintiffs have not suffered any kind of financial injury or compensable injury as a result of the conduct alleged on the part of LUMC.[1] Plaintiffs' complaint is filled with vague conclusions or theories about harm rather than factual allegations demonstrating such injury or damages suffered by either Named Plaintiff. Indeed, the Complaint fails to plead a single *fact* suggesting that the Plaintiffs have incurred a penny of financial damage traceable to Plaintiffs' voluntary use of LUMC's Website, or LUMC's alleged use of tracking technologies. This reality is acknowledged by Plaintiffs in their Opposition, where the only alleged injuries or damages are: (1) their lost time and opportunity costs associated with attempting to mitigate the "actual consequences of the Pixel"; (2) their loss of the benefit of the bargain; (3) their Private Information being allegedly misused and surreptitiously transmitted to third parties; (4) being targeted by ads and spam; and (5) their receipt of "targeted medical advertising" relating to medical conditions and medication supposedly disclosed to LUMC in confidence. (Plaintiffs' Opposition, p. 6). None of these non-specific and conclusory allegations are sufficient to allow Plaintiffs' action to proceed, and demonstrate the speculative and meritless narrative they need this Court to buy into in hopes that the threat of a class action lawsuit against LUMC will yield a financial windfall.

Plaintiffs' Opposition also further reinforces why Plaintiffs' allegations fail as a matter of law. Plaintiffs repeatedly makes sweeping allegations against LUMC that LUMC collected and disclosed Plaintiffs' personally identifiable information ("PII") and protected health information ("PHI") yet Plaintiffs never actually identifies what supposedly protected information (and linked to these Named Plaintiffs) was *actually* disclosed to third parties. Plaintiffs' Complaint is devoid of any allegations demonstrating the collection and disclosure of legally protected PII or PHI

---

[1] Capitalized Terms or acronyms shall have the same meaning as in Defendant's Memorandum in Support of its Motion to Dismiss ("LUMC's Memorandum"). *See* ECF No. 33.

through the use of any tracking technologies on its publically facing website. Plaintiffs' baseless allegations that LUMC improperly disclosed 'how long Plaintiffs and Class Members who visited and used its Online Platforms spent on a particular web page, which buttons they clicked, which pages they viewed and the text or phrases they typed into various portions of the Website.' is unavailing because this information does not constitute any type of legally protected information that gives rise to any cause of action against LUMC. (*See* Opp. at 2.) Even more, Plaintiffs cannot and do not dispute that they had notice of how LUMC's website used data and information as set forth in LUMC's privacy statements. This lack of sufficient factual pleadings combined with a complete failure to allege any injury-in-fact or damages mandates dismissal of Plaintiffs' lawsuit; which is also merited for all the reasons identified in LUMC's Memorandum and further discussed below.

## ARGUMENT

### I. PLAINTIFFS' VAGUE ALLEGATIONS DO NOT CONFER STANDING.

LUMC rightfully challenges Plaintiffs' standing under Article III as Plaintiffs have failed to allege *any* injury in fact that is fairly traceable to LUMC and which can be redressed by this Court. Plaintiffs first argue that Plaintiffs have alleged an injury in fact because Plaintiffs' *admittedly* intangible harm equates to the harm of disclosure of private information and intrusion upon seclusion. Plaintiffs' own position shows that they lack standing under Article III.

Interestingly, Plaintiffs cite to *TransUnion* to support its position that Plaintiffs' allegations have sufficiently alleged an injury in fact sufficient for Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). The *TransUnion* decision, however, affirms that Plaintiffs lack Article III standing in this action. The Supreme Court rejects the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory

right and purports to authorize that person to sue to vindicate that right. *Id*. Significantly, an injury in law is *not* an injury in fact. Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a 'freewheeling power to hold defendants accountable for legal infractions.' *Id*. at 427. A plaintiff cannot maintain a lawsuit where the plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit. Importantly, the Supreme Court in *TransUnion* held that an uninjured plaintiff who sues is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *Id*. at 427-28. **Those are not grounds, however, for Article III standing.** *Id*. at 428 (emphasis added). Nothing in Plaintiffs Opposition changes the fact that they have alleged no *facts* suggesting the existence of any injury-in-fact. (LUMC's Motion, pp. 4-5.) Further, even if Plaintiffs did sufficiently allege harm, the Complaint is completely devoid of allegations demonstrating how this is fairly traceable to LUMC's conduct. Plaintiffs' Complaint includes URL strings that plaintiffs allege contained what information was intercepted and/or disclosed. *See* Amended Complaint ¶¶ 125 & 134. *None* of these URL string contain any identifier that connects the query or information to the *specific named Plaintiff;* instead – they contain only generic or innocuous general information with no way to tie such information to any individual, much less the Named Plaintiffs. Because Plaintiffs have failed to sufficiently allege any particularized harm resulting from LUMC's conduct or a causal link to LUMC's alleged conduct they lack standing and their Complaint must be dismissed.

## II.     PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE LUMC VIOLATED THE ELECTRONIC COMMUNICATIONS PRIVACY ACT.

Plaintiffs' claims that LUMC violated the ECPA or the IEA fail because Plaintiffs have not and cannot show that Plaintiffs' voluntary use of LUMC's public website constituted an

3

unauthorized interception, use or disclosure of an electronic communication in violation of the ECPA or the IEA. In the context of Plaintiffs' allegations relating to tracking pixels, there is no direct interception during transmission that could provide for a violation of the ECPA. Furthermore, LUMC consented to any purported interception, as a party to the communication as the web provider of its website and the contents of any communication were not intercepted by LUMC. Therefore, to the extent any communication existed, the fact that LUMC was a party to it defeats Plaintiffs' claims that LUMC violated the ECPA.

Plaintiffs' claim that the One-Party Exception does not apply because LUMC intercepted the electronic communications "***for the purpose of committing any criminal or tortious act***" lacks any factual basis. *See* 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiffs allege that LUMC's use of tracking pixels on its public website shows that it acted with the affirmative *purpose* of 'violating HIPAA by collecting and disclosing their PHI and/or individually identifiable health information ("IIHI") without consent thereby tortuously and criminally invading the privacy of Plaintiffs and the Class Members." (Plaintiffs' Opposition, p. 11). Fatal to Plaintiffs' argument, Plaintiffs have not identified any *specific* protected health information that LUMC allegedly transmitted or disclosed to a third party for its purpose of violating HIPAA. Plaintiffs' allegations reference general medical conditions but fail to show that LUMC intercepted any type of communication containing such information or that LUMC then transmitted this information to a third party. This Court has repeatedly ruled that Plaintiffs' claims fail where the plaintiffs have failed to 'allege any **particular health or treatment information** disclosure specific as to them that [the health system] allegedly made to any third-party." *Kurowski v. Rush System for Health*, 2023 WL 4707184, at *3 (emphasis added); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2. Similarly, Plaintiffs' allegations against LUMC are far too vague to

4

allow an inference that LUMC actually disclosed any of Plaintiffs' PHI rather than simple meta data such as IP addresses. As this Court remarked in *Hartley*, there is an absolute dearth of information specific to these Plaintiffs regarding what information LUMC supposedly disclosed to third parties and therefore, Plaintiffs' ECPA must be dismissed.

### III. PLAINTIFFS' CLAIM THAT LUMC VIOLATED THE ILLINOIS EAVESDROPPING STATUTE FAILS.

Plaintiffs' allegations do not support any claim that LUMC violated the Illinois Eavesdropping Statute given the lack of interception of any data sent by Plaintiffs to LUMC. The copying and transmitting of information to Facebook and Google happens independently and, as a result, does not amount to any interception in violation of the statute. *See* LUMC Memorandum at 22-23.

The IAE only applies to a person who is "not a party" to the communication. Without any doubt, to the extent there was any "communication," LUMC was a party to it, and thus, there can be no violation of the Eavesdropping Act. *See Zak v. Bose Corp.*, 2020 WL 2762552, at *3 (N.D Ill. May 27, 2020) (dismissing claim for violation of Illinois Eavesdropping Act, with prejudice, for failing to allege that defendant was not party to communication); see also 720 ILCS § 5/14 2(a)(3); *Vasil v. Kiip, Inc*., 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) (dismissing Illinois Eavesdropping Act claim because it does not preclude party to communications from recording or transcribing it).

Further, even if there was an interception of a communication to which LUMC was not a party, such interception was not "surreptitious." The IEA defines "surreptitious" as "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 ILCS 5/14-1(g). LUMC publicly discloses how information is tracked on its website via its Privacy Statements. LUMC informs its web users that its website uses tracking technologies and even discloses that

5

PII may be collected (not to be confused with legally protected PII under PIPA). Plaintiffs have not and cannot allege that LUMC obtained any interception of communication in a manner that was 'surreptitious' and therefore, Plaintiffs' IEA claim must be dismissed.

## IV. PLAINTIFFS' COMMON LAW CLAIMS FAIL.

As LUMC specifically sets forth in its Motion to Dismiss, Plaintiffs ultimately have not and cannot establish that they suffered any injury that allegedly resulted from their use of LUMC's public website. With no actionable harm, all of Plaintiffs' common law claims fail, and nothing in Plaintiffs' Opposition changes that fundamental reality.

*Negligence.* Plaintiffs must show that LUMC owed a duty to Plaintiffs, breached said duty, and the breach caused injury to the Plaintiffs. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256 (1999). Most significantly, Plaintiffs have not and cannot establish that they suffered any compensable damages.[2] Plaintiffs' vague allegation that they suffer from 'fear, anxiety and worry about the status of their Private Information' fails to amount to any compensable damage. See *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) There can be no recovery of speculative or unproved damages and Plaintiffs' negligence claim must be dismissed. *Kayman v. Rasheed*, 2015 IL App (1st) 132631, ¶ 71.

*Invasion of Privacy.* Plaintiffs cannot maintain any claim that LUMC intruded upon their privacy as LUMC never invaded the Plaintiffs' domain and, even if they had, such an intrusion would not be considered highly offensive. Plaintiffs voluntarily accessed and used LUMC's public

---

[2] Plaintiffs cite to *Roper v. Rise* for the proposition that allegations of emotional harm are sufficient to satisfy a negligence claim under Illinois law, including in the data breach context. *Roper v. Rise Interactive Media & Analytics, LLC*, 2024 WL 1556298. Significantly, however, the *Roper* case arose in the traditional data breach context with a certified criminal threat actor with the malicious intent to steal and potentially maliciously use the PHI or PII that was stolen—that is entirely distinguishable from the facts of this case where there are no such analogous allegations.

website *at no cost*. Any claims brought by Plaintiffs that LUMC intruded upon their domain and in a manner that is considered highly offensive are contrary to law and logic.

*Breach of Contract.* Plaintiffs have not and cannot establish that any agreement (explicit or implied) governed the parties' conduct and therefore, cannot maintain any breach of contract claim against LUMC. Plaintiffs' voluntary and intentional use of LUMC's website does not create any type of implied contractual relationship between the two parties. Furthermore, Plaintiffs have not identified any compensable damages and therefore, their claim must fail.

*Unjust Enrichment.* Plaintiffs' claim that LUMC has unjustly retained a benefit from Plaintiffs' voluntary and intentional use of its public website to Plaintiffs' detriment lacks merit. Plaintiffs do not attribute that the alleged "monetary benefit" conferred on LUMC was based on using its website (as opposed to obtaining medical services), nor do they plead that they expected payment from LUMC in return for using LUMC's website. Instead, Plaintiffs make self-serving statements that they have alleged with particularity the value of their 'private information', which is nonsensical. Plaintiffs' voluntary and free use of LUMC's website conferred no benefit on LUMC, meaning there was no benefit, which LUMC could then unjustly retained. Certainly, any entity is not unjustly enriched every time an individual decides to surf the web and visits an entity's public website. Further, any alleged benefit from the public's use of LUMC's website does not violate the fundamental principles of justice, equity, and good conscience—which necessarily underlie a claim for unjust enrichment. *See Banco Panamericano, Inc. v. City of Peoria, Ill.*, 880 F.3d 329, 333 (7th Cir. 2018).

**V.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE ICFA.**

Plaintiffs' Opposition offers no tenable legal responses for why Plaintiffs cannot maintain an action against LUMC for the alleged violation of the ICFA. *First,* Plaintiffs disingenuously

claim that Plaintiffs constitute 'consumers' under the ICFA and therefore, can maintain an action against LUMC for its alleged violation of the ICFA. This position lacks all merit. Plaintiffs, as alleged users of LUMC's online platforms, voluntarily used LUMC's public facing website and do not qualify as 'consumers' for purposes of bringing an action under ICFA. The statutory language is clear: a consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Serpico v. Menard, Inc.*, 927 F. Supp. 276, 282 (N.D. Ill. 1996).

Plaintiffs' use of the *Frazier* decision in support of this argument is equally unavailing. The 'consumer nexus' test requires a showing of 'trade practices directed to the market generally or that the conduct otherwise implicates consumer protection concerns.' *Frazier v. U.S. Bank Nat' Ass'n*, 2013 WL 1385612, at *4. In *Frazier*, the Plaintiff alleged an established practice where defendant tracked its borrowers' loan *en masse* and the borrowers qualified as consumers as evidenced of their purchase of the defendant's loan services. *Id*. Plaintiff was able to establish the consumer nexus test because he was similarly tracked as defendant's customers. Here, Plaintiffs do not qualify as 'consumers' of LUMC simply because Plaintiffs voluntarily used LUMC's website in the context of gathering information from LUMC's public sites. Courts routinely dismiss Plaintiffs' ICFA claims where Plaintiffs fail to make any allegations of any purchase or contract to purchase a good or service from a defendant. *Serpico*, 927 F. Supp. at 282; *Norton v. City of Chicago*, 267 Ill.App.3d 507, 509–10 (1st Dist. 1994). Because Plaintiffs do not constitute consumers under the ICFA, they cannot maintain an action against LUMC.

***Second,*** Plaintiffs claim that LUMC engaged in any deception or unfairness belies logic given LUMC's publicized privacy statement discloses its use of cookies and defines how information will be collected on its public facing website. Instead, Plaintiffs use vague terms such

'invasive depth of tracking technologies' to create the false narrative that LUMC engaged in some type of deceptive conduct. This is simply not true. LUMC disclosed how information was collected, how cookies may store user information such as preferences and identifiers, and how LUMC may receive and record information from users' activity on its website. (LUMC's Motion to Dismiss, pp. 19-20). Plaintiffs' decision to continue using LUMC's website despite LUMC's clear disclosure negates any allegation of deception under the ICFA.

*Third*, Plaintiffs have not and cannot allege that they suffered any actual monetary loss that resulted from their voluntary and costless use of LUMC's website. Plaintiffs make a half-hearted attempt to allege monetary loss in the form of 'overpaying for Defendant's health care services' but Plaintiffs' allegations are strictly related to their use of LUMC's website and the alleged disclosure of private information to third parties. Plaintiffs do not allege any monetary damages and cannot remedy this defect. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (Ill. 2002); *Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 647 (7th Cir. 2019); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (actual damages under the ICFA must arise from purely economic injuries).

*Finally,* Plaintiffs Opposition does not plausibly explain how the allegations pled in their Complaint make out a violation of the Illinois Personal Information Protection Act, Plaintiffs complaint is devoid of specific information relating to *exactly what* medical information was supposedly provided to LUMC. Plaintiffs argue that if LUMC only disclosed Plaintiffs' IP addresses or URL strings, this alleged disclosure constitutes a violation of PIPA—that is factually inaccurate. IP addresses or URL strings are not protected personally identifiable information for establishing a violation under this Act. *See* 815 ILCS 530/1 Sec. 5. Even if Plaintiffs' allegations

9

were accepted as true, the collection of Plaintiffs' IP addresses or URL strings does not constitute a violation of PIPA and Plaintiffs' claim fails.

## VI. PLAINTIFFS' CLAIM ARE PREEMPTED BY PIPA AND MUST BE DISMISSED.

Plaintiffs' Opposition cannot dispute that, through PIPA, the Illinois legislature deliberately specified the scope of protected information and the duty to protect such information, and in turn, created an exclusive remedy for the breach of that duty. 815 ILCS 530/5-20. The Illinois Supreme Court has applied preemption to a variety of statutes that do not contain any provision expressly stating that the statutory remedy preempts all common law remedies; and that were enacted *well after* common law causes of action were recognized in Illinois Supreme Court precedent makes clear that when the legislature provides for a limited remedy designed to target a subject, that statutory scheme preempts common law claims. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (1961); *Cunningham v. Brown*, 22 Ill. 2d 23 (1961); *Hall v. Gillins*, 147 N.E. 2d 352 (Ill. 1958); *H.K. through Farwell v. Google LLC*, 595 F. Supp. 3d 702, 706 (C.D. Ill. 2022). Here, PIPA preempts all common law remedies—whether couched as negligence, unjust enrichment, breach of an implied contract or breach of a fiduciary duty. Accordingly, all such claims should be dismissed.

## CONCLUSION

For all of the above-referenced reasons, LUMC respectfully requests that this Court enter an Order granting its Motion to Dismiss Plaintiffs' Complaint in its entirety and dismissing all if Plaintiffs' claims with prejudice and without leave to amend.

Dated: May 2, 2024                      Respectfully submitted,

By:  */s/ Emily A. Miller*
**GORDON, REES, SCULLY & MANSUKHANI LLP**
One North Franklin; Suite 800
Chicago, Illinois 60606
Tel: (312) 619-4937
Fax: (312) 565-6511
Emily A. Miller - #6333074
Brian Middlebrook, Esq.*
Justin Holmes, Esq. *
1 Battery Park Plaza
Suite 2801
New York, NY 10004
*Attorneys for Loyola University Medical Center*
*Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

By:  */s/ Emily A. Miller*
GORDON & REES LLP
One North Franklin; Suite 800
Chicago, Illinois 60606
emiller@grsm.com
Tel: (312) 619-4937
Fax: (312) 565-6511